IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JANE DOE II, as Administrator   )
of the Estate of Jane Doe I;  )
and JOHN DOE I             )
                       )
    Plaintiffs,        )
                       )
v.                    )   CASE NO. CV418-180
                       )
SAVANNAH-CHATHAM COUNTY PUBLIC )
SCHOOL SYSTEM and MARVIN T.   )
JOHNSON,              )
                       )
    Defendants.        )
                       )

## O R D E R

Before the Court is Defendant Marvin T. Johnson's Motion for Summary Judgment (Doc. 39) and Defendant Savannah-Chatham County Public School System's ("the District") Motion for Summary Judgment (Doc. 43). For the following reasons, Defendant Johnson's motion (Doc. 39) is **GRANTED** and the District's motion (Doc. 43) is **GRANTED.**

## BACKGROUND[1]

This case involves an alleged sexual assault of Plaintiff John Doe by his high school assistant principal, Defendant Johnson. (Doc. 1, Attach. 7.) The District hired Defendant Johnson in 1997 as the band director for Savannah High School and in 2017 the District promoted him to assistant principal. (Doc. 49, Attach. 5 at 8.) At the time Defendant Johnson became an assistant principal, John Doe was a sophomore at Savannah High School. (Doc. 43, Attach. 7 at ¶ 12; Doc. 50, Attach. 9 at ¶ 12.)

On January 31, 2017, John Doe stayed after school for detention. (Doc. 43, Attach. 7 at ¶ 19; Doc. 50, Attach. 9 at ¶ 19.) Defendant Johnson was present at detention. (Doc. 43, Attach. 7 at ¶ 20; Doc. 50, Attach. 9 at ¶ 20.) Defendant Johnson told John Doe that if he stayed late to help with after-school events that night, John Doe would not need to serve anymore detention. (Doc. 43, Attach. 7 at ¶ 21; Doc. 50, Attach. 9 at ¶ 21.) John Doe called his mother and she gave him permission to

---

[1] The relevant facts are taken principally from the Defendants' Statements of Undisputed Material Facts (Doc. 39, Attach. 2; Doc. 43, Attach. 7) and Plaintiffs' responses thereto (Doc. 49, Attach. 6; Doc. 50, Attach. 9). Pursuant to Federal Rule of Civil Procedure 56(e) and Southern District of Georgia Local Rule 56.1, all material facts not controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate. Where the parties offer conflicting accounts of the events in question, this Court draws all inferences and presents all evidence in the light most favorable to Plaintiffs. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (citing Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

2

stay late. (Doc. 43, Attach. 7 at ¶ 22; Doc. 50, Attach. 9 at ¶ 22.) After the events ended, Defendant Johnson asked John Doe if he wanted a ride home. (Doc. 43, Attach. 7 at ¶ 26; Doc. 50, Attach. 9 at ¶ 26.) John Doe accepted Defendant Johnson's offer. (Doc. 43, Attach. 7 at ¶ 26; Doc. 50, Attach. 9 at ¶ 26.)

Instead of taking John Doe directly home, Defendant Johnson told John Doe that he needed to first drop off files at his house. (Doc. 43, Attach. 7 at ¶ 32; Doc. 50, Attach. 9 at ¶ 32.) When they arrived at Defendant Johnson's house, Defendant Johnson walked inside and told John Doe to follow him. (Doc. 49, Attach. 3 at 120.) John Doe followed Defendant Johnson into the house and then realized that he had forgotten his glasses in Defendant Johnson's car. (Id. at 121.) John Doe went back outside to the car to retrieve his glasses and, when John Doe returned to the house, Defendant Johnson had taken off his pants. (Id.) Defendant Johnson told John Doe to take his pants off and John Doe complied. (Id.) Defendant Johnson then gestured for John Doe to perform oral sex on him and John Doe proceeded to do so. (Id. at 125–126.) While in the house, Defendant Johnson also forcibly penetrated John Doe. (Id. at 127.)[2]

---

[2] Defendant Johnson expressly denies that he sexually assaulted John Doe. (Doc. 39, Attach. 1 at 1.) Viewing the facts in the light most favorable to Plaintiffs, however, the Court will assume for purposes of this motion that the sexual assault occurred.

After the assault, Defendant Johnson drove John Doe home. (Id. at 128.) During the car ride, Defendant Johnson asked John Doe repeatedly whether he was going to "tell." (Id.) Defendant Johnson and John Doe had no other sexual encounters after this incident. (Id. at 48.)

In approximately February or March of 2017, John Doe wrote Defendant Johnson a letter, wherein John Doe stated that he had slept with another teacher and that the teacher paid him $600 to "keep [his] mouth shut . . . ."[3] (Doc. 43, Attach. 1 at 16-17, 66.) John Doe also requested that Defendant Johnson buy him an iPhone for $769.99. (Id.) After receiving John Doe's letter, Defendant Johnson gave John Doe an unknown amount of cash. (Doc. 49, Attach. 3 at 50.)

In April 2017, John Doe noticed a rash forming on his body.[4] (Doc. 43, Attach. 1 at 20-21.) On April 28, 2017, John Doe emailed Defendant Johnson and asked Defendant Johnson if he had HIV or AIDS. (Doc. 50, Attach. 7 at 19.) Defendant Johnson responded, "Boy this is my work email and no." (Id. at 19.) John Doe then replied that Defendant Johnson was "the only person [he] had sex with . . . ." (Id. at 16.) Defendant Johnson replied, "When I get

---

[3] The Court notes that, in his deposition, John Doe testified that he had not actually slept with another teacher and that his statement in the letter was false. (Doc. 49, Attach. 3 at 63.)
[4] It was later determined that John Doe had contracted syphilis. (Doc. 50, Attach. 6 at 6.)

4

back in town I'm going to get tested[,] if something anything [sic] comes back we [are going to] have a problem." (Id. at 14.)

On Sunday, April 30, 2017, John Doe told his mother about the January 31 incident with Defendant Johnson. (Doc. 43, Attach. 7 at ¶ 47; Doc. 50, Attach 9 at ¶ 47.) Prior to telling his mother, John Doe had not disclosed the incident to anyone else. (Doc. 49, Attach. 3 at 65-66.) The next day, Monday, May 1, 2017, John Doe's mother and stepfather went to Savannah High School to speak with Defendant Johnson. (Doc. 50, Attach. 1 at 17-18.) When John Doe's parents approached Defendant Johnson, he called Tammy Broadnax, the principal of Savannah High School, and told her she needed to come speak with John Doe's parents. (Id. at 18.) When Broadnax reached John Doe's parents, they were very upset and told her that Defendant Johnson had been "messing with [their] son." (Id.)

Broadnax directed Defendant Johnson to wait in his office while she spoke with John Doe's parents and Broadnax called the school's resource officer. (Id.) John Doe's mother then told Broadnax and the resource officer about the January 31 incident between John Doe and Defendant Johnson. (Id. at 19.) John Doe's stepfather retrieved John Doe from class and John Doe told Broadnax and the resource officer about the incident between he and Defendant Johnson. (Id.) Right away, the resource officer called the Metro Police Department. (Id.)

5

Officers from the Metro Police Department came to the school and obtained a statement from John Doe. (Id. at 19-20.) After John Doe spoke with Metro officers, the District arranged for John Doe and his family to meet with Dr. Quentina Miller-Fields. (Doc. 43, Attach. 7 at ¶ 54; Doc. 50, Attach. 9 at ¶ 54.) Dr. Miller-Fields promptly arranged for Doe to be transferred to another school. (Doc. 43, Attach. 7 at ¶ 54; Doc. 50, Attach. 9 at ¶ 54.)

Broadnax listened to John Doe give his statement to the officers and then immediately called her supervisor, Aretha Rhone-Bush, and the District's director of risk management, Rob Gordon. (Doc. 43, Attach. 7 at ¶ 53; Doc. 50, Attach. 9 at ¶ 53; Doc. 50, Attach. 1 at 20.) Broadnax also called the Savannah High School social worker so that she could contact the Department of Family and Child Services. (Doc. 43, Attach. 7 at ¶ 53; Doc. 50, Attach. 9 at ¶ 53; Doc. 50, Attach. 1 at 20.) Gordon instructed Broadnax to meet with Defendant Johnson and ascertain his version of the incident. (Doc. 50, Attach. 1 at 20.) In his office, Defendant Johnson told Broadnax that there were "two sides to the story." (Id.) Defendant Johnson claimed that, at some point that year, John Doe came into his office, tried to kiss Defendant Johnson and bit Defendant Johnson on the lip. (Id.) Broadnax asked Defendant Johnson why he did not report this incident earlier, to which Defendant Johnson replied, "In 20 years that had never happened. I didn't know how to deal with it." (Id.) Broadnax then told

6

Defendant Johnson to refrain from telling her any more information about the incident. (Id.)

Later that morning, Defendant Johnson met with Gordon and the District's Chief Human Resources Officer, Ramon Ray. (Doc. 43, Attach. 7 at ¶ 56; Doc. 50, Attach. 9 at ¶ 56.) During that interview, Defendant Johnson denied having an inappropriate relationship with John Doe and gave Ray and Gordan the letter that John Doe had written Defendant Johnson requesting money for a new cellphone. (Doc. 43, Attach. 7 at ¶ 56; Doc. 50, Attach. 9 at ¶ 56.) After this meeting, District officials prohobited Defendant Johnson from having access to students. (Doc. 43, Attach. 7 at ¶ 59; Doc. 50, Attach. 9 at ¶ 59.)

Either late in the afternoon on May 1 or on May 2, District officials searched Defendant Johnson's school email account and discovered the April 2017 email exchange between he and John Doe. (Doc. 43, Attach. 7 at ¶ 60; Doc. 50, Attach. 7 at ¶ 60.) After reviewing the emails and the letter from John Doe to Defendant Johnson, District officials internally decided not to renew Defendant Johnson's employment contract. (Doc. 50, Attach. 8 at 22.) Ray testified that the decision to not renew a teacher's contract is required by statute and is "in effect, a termination." (Doc. 50, Attach. 8 at 15.) He also testified that this decision was the most efficient way to terminate Defendant Johnson considering that the District was required to decide whether to

7

renew all teachers' contracts by May 15 and that terminating Defendant Johnson immediately would have required additional procedures. (Doc. 43, Attach. 5 at 4-5.)

On May 11, 2017, the District notified Defendant Johnson that his contract would not be renewed and that his employment with the District would terminate on June 30, 2017. (Doc. 43, Attach. 5 at 36.) On May 15, 2017, Defendant Johnson requested a hearing under O.C.G.A. § 20-2-942 regarding the nonrenewal of his contract.[5] (Id. at 55.) In response, the District scheduled a hearing for August 9, 2017 and sent Defendant Johnson a letter explaining the reasons for his nonrenewal. (Id. at 57-59.) In the letter, the District explained that it recommended Defendant Johnson's contract for nonrenewal because he "failed to report suspected child abuse as a mandatory reporter" and because he "intentionally provided untruthful testimony during an administrative inquiry . . . ." (Id. at 57.) The District explained that Defendant Johnson had a duty to report John Doe's claim in the letter that John Doe had slept with another teacher and that Defendant Johnson failed to discharge this duty. (Id. at 57-58.) The District also explained that Defendant Johnson, in his email exchange with John Doe, seemed to acquiesce to John Doe's allegations about sexual misconduct,

---

[5] O.C.G.A. § 20-2-942 outlines the procedures for terminating tenured teachers and administrators' contracts through nonrenewal of an employment contract. Plaintiffs have not disputed that the District followed the procedures set forth in § 20-2-942.

8

indicating that Defendant Johnson had been dishonest during his May 1, 2017, interview with District officials. (Id.) Before the hearing occurred, Defendant Johnson resigned from his position on July 31, 2017. (Id. at 61.)

The District also reported John Doe's allegations to the Georgia Professional Standards Commission, the entity responsible for investigating allegations of inappropriate behavior by teachers. (Id. 65.) On November 30, 2017, in response to the District's report, the Commission revoked Defendant Johnson's teaching license. (Id. at 63.)

On May 9, 2018, Plaintiff Jane Doe I, individually and as natural guardian of John Doe, and John Doe filed this case in the State Court of Chatham County, Georgia. (Doc. 1, Attach. 1 at 4.) On July 12, 2018, Plaintiffs filed an amended complaint, in which Plaintiffs allege that: (1) the District was negligent in hiring and retaining Defendant Johnson; (2) the District violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., ("Title IX"); and (3) the District violated 42 U.S.C. § 1983.[6] (Doc. 1, Attach. 7 at 6-10.) The District removed the case to this Court on July 27, 2018.[7] (Doc. 1 at 2.) Now, Defendant Johnson and

_____

[6] As will be discussed later in this order, Plaintiffs appear to only allege these claims against the District. (Doc. 1, Attach. 7.)

[7] After the District removed this case, Jane Doe I died and the Court stayed the case to allow the Plaintiffs to substitute parties. (Doc. 33 at 1; Doc. 34.) Subsequently, the Plaintiffs

the District have filed separate motions for summary judgment arguing that Plaintiffs' claims fail as a matter of law. (Docs. 39, 43.) The Court will address each motion in turn.

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an

---

substituted Jane Doe II, as administrator of the estate of Jane Doe I, for Jane Doe I. (Doc. 36.)

element is essential. <u>DeLong Equip. Co. v. Wash. Mills Abrasive</u> <u>Co.</u>, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. <u>Matsushita</u>, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u>, 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See</u>, <u>e.g.</u>, <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to

11

grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

## ANALYSIS

I.   DEFENDANT JOHNSON'S MOTION FOR SUMMARY JUDGMENT

Defendant Johnson argues that he is entitled to summary judgment on all of Plaintiffs' claims. (Doc. 39 at 1.) Defendant Johnson primarily contends that Plaintiffs' amended complaint only alleges that the District negligently hired and retained Defendant Johnson and that the District violated Title IX and 42 U.S.C. § 1983. (Doc. 39, Attach. 1 at 3-5.) The Court will address whether Defendant Johnson is entitled to summary judgment on each of Plaintiffs' claims.[8]

---

[8] In their response to Defendant Johnson's motion, Plaintiffs initially argue that "adverse inferences should be drawn against Defendant Johnson." (Doc. 49 at 5-6.) In particular, Plaintiffs request that the Court infer Defendant Johnson raped John Doe because Defendant Johnson invoked the Fifth Amendment in response to deposition questions about the incident. (Doc. 49 at 5-6.) Plaintiffs are correct that the Eleventh Circuit has held "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." <u>United States v. Premises Located at Route 13</u>, 946 F.2d 749, 756 (11th Cir. 1991), as amended (Nov. 5, 1991) (quotations omitted). However, an exception to this rule applies where "a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment . . . ." <u>Id.</u> (citing <u>Pervis v. State Farm Fire and Cas. Co.</u>, 901 F.2d 944, 946-47 (11th Cir. 1990)). Here, Defendant Johnson is a defendant in both a civil and a criminal case concerning his alleged rape of John Doe. <u>See</u> <u>State of Georgia v. Johnson</u>, No. SPCR18-01509-J1 (Ga. Sup. Ct. 2018). Accordingly, the Court declines to draw negative inferences against Defendant Johnson for invoking the Fifth Amendment during

A. Negligent Hiring and Retention Claim

As an initial matter, Plaintiffs have failed to respond to Defendant Johnson's argument that he is entitled to summary judgment on Plaintiffs' state law negligent hiring and retention claim. Accordingly, Plaintiffs are deemed to have abandoned that claim. See Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citation omitted). Nevertheless, Plaintiffs claim also fails on the merits. " 'Under Georgia law, liability for negligent hiring or retention requires evidence that the **employer** knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury.' " Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1247 (11th Cir. 2001) (citing Alpharetta First United Methodist Church v. Stewart, 221 Ga. App. 748, 753, 472 S.E.2d 532, 536-37 (Ga. Ct. App. 1996)) (emphasis added). In this circumstance, Defendant Johnson is not an employer and therefore a claim against Defendant Johnson for negligent hiring must be dismissed. Consequently, Defendant Johnson's motion (Doc. 39) is **GRANTED** to

---

his deposition. Regardless, in the context of a motion for summary judgment, the Court views all facts in light most favorable to Plaintiffs.

13

the extent that Plaintiffs intended to raise a negligent hiring
and retention claim against him.

    B.   Title IX Claim

    Next, Defendant Johnson argues that he is entitled to summary
judgment on Plaintiffs' Title IX claim. (Doc. 39, Attach. 1 at 4.)
Specifically, Defendant Johnson contends that a Title IX claim may
only be brought against a program or activity as defined by Title
IX and, therefore, such a claim may not be alleged against him.
(Doc. 39, Attach. 1 at 4.) The Court agrees.

    Title IX provides: "No person in the United States shall, on
the basis of sex, be excluded from participation in, be denied the
benefits of, or be subjected to discrimination under any education
program or activity receiving Federal financial assistance." 20
U.S.C. § 1681(a). The Eleventh Circuit has been clear, however,
that "Title IX does not allow claims against individual school
officials; only funding recipients can be held liable for Title IX
violations." Williams v. Bd. Of Regents of Univ. Sys. Of Ga., 477
F.3d 1282, 1300 (11th Cir. 2007) (citing Hartley v. Parnell, 193
F.3d 1263, 1270 (11th Cir. 1999)). Consequently, to the extent
Plaintiffs allege that Defendant Johnson violated Title IX, their
claim must fail. See Brinkley v. Waters, No. 2:18-CV-89, 2021 WL
1233352, at *5 n.8 (S.D. Ga. Mar. 31, 2021) ("To the extent
Plaintiffs intend to bring their Title IX claim against any
individual, such claim must be dismissed."). As a result, Defendant

14

Johnson's motion (Doc. 39) is **GRANTED** to the extent that Plaintiffs intended to allege their Title IX claim against him.[9]

C.   Section 1983 Claim

Lastly, Defendant Johnson argues that Plaintiffs, in their amended complaint, only allege that the District violated § 1983, not Defendant Johnson. (Doc. 39, Attach. 1 at 9; Doc. 49 at 3.) In particular, Defendant Johnson highlights that Count III of Plaintiffs' amended complaint is titled "Violation of 42 U.S.C. § 1983—Policy, Practice, and/or Custom Causing Constitutional Harm." (Doc. 1, Attach. 7 at 9.) Under Count III, Plaintiffs allege that the "District violated John Doe['s] constitutional right to bodily integrity" and that "[a]s a result of [the] District's policy, practice, and/or custom, John Doe [] was raped by Defendant Johnson, which caused John Doe [] to suffer damages." (Doc. 1, Attach. 7 at 9-10.) Because Plaintiffs' have failed to raise any specific allegations against Defendant Johnson under Count III, Defendant Johnson argues that he is entitled to summary judgment on Count III.

Under Federal Rule of Civil Procedure 8(a), a plaintiff must provide "a short and plain statement of the claim showing that the

---

[9] The Court notes that Plaintiffs seem to have also abandoned their Title IX claim against Defendant Johnson because Plaintiffs failed to respond to Defendant Johnson's motion on this issue. See Resolution Tr. Corp., 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

pleader is entitled to relief . . . ." It follows that "a plaintiff's allegations need only be sufficiently detailed-at least for the purpose of stating an adequate claim on the merits-to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1304 (11th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004). "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Id.

From the Court's perspective, Plaintiffs' amended complaint does not allege that Defendant Johnson violated § 1983. In their amended complaint, Plaintiffs allege that the District violated § 1983 based on a theory of municipal liability. (See Doc. 1, Attach. 7 at 9-10 ("As a result of Defendant District's policy, practice, and/or custom, John Doe I was raped by Defendant Johnson . . . .").) A municipal-liability claim under § 1983 is distinct from an individual-liability claim under § 1983, which Plaintiffs attempt to allege against Defendant Johnson for the first time in their response brief. See Hackett v. Fulton Cnty. Sch. Dist., 238 F. Supp. 1330, (N.D. Ga. 2002) (analyzing the plaintiff's § 1983

16

allegations against a teacher and a school district as separate theories of liability).

A municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." Mercado v. City of Orlando, 407 F.3d 1152, 1161 (11th Cir. 2005) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978)). In contrast, to establish individual liability under § 1983, a plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166, 150 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985). On its face, Plaintiffs' § 1983 claim does not allege that Defendant Johnson acted under color of state law or that Defendant Johnson violated John Doe's constitutional rights; rather, their claim alleges only facts related to the District's policy or custom that caused John Doe's injuries.

In response to Defendant Johnson's motion, Plaintiffs argue that the Court should construe their complaint as raising a § 1983 claim against Defendant Johnson because the damages section of their complaint states that both Defendants' "wrongful conduct" caused Plaintiffs' damages. (Doc. 49 at 5.) This general allegation, however, is not enough to put Defendant Johnson on

17

notice that Plaintiffs intended to hold him liable under § 1983. See Lightfoot v. Henry Cnty. Sch. Dist., 771 F.3d 764, 779 (11th Cir. 2014) ("The general allegations that appear elsewhere in the complaint merely supported [the plaintiff's] FMLA retaliation count, and did not put the School District on notice that they also pertained to her ADA retaliation count."); C.f. Johnson v. City of Atlanta, Ga., No. 1:06-CV-1706-AJB, 2008 WL 11415848, *2 (N.D. Ga. Jan. 23, 2008) (granting summary judgment to the city-defendant on the plaintiff's § 1983 malicious prosecution claim because the plaintiff's complaint alleged the claim against only the officer-defendant, not the city, and because plaintiff could not amend her complaint through argument in her responsive brief).

Count III of Plaintiffs' amended complaint plainly alleges that **the District** violated § 1983 by having a policy or custom of "lax investigation and non-responsiveness." (Doc. 1, Attach. 7 at 9-10 (emphasis added).) Count III does not, however, contain any specific allegations pertaining to whether or how Defendant Johnson violated John Doe's constitutional rights under color of state law. "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." Gilmour, 382 F.3d at 1315; c.f. Bogovich v. Sandoval, 189 F.3d 999, 1001 (9th Cir. 1999) ("[C]ourts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different

cause of action."). Plaintiffs have had ample time to request leave to amend their complaint to add a § 1983 claim against Defendant Johnson and have failed to do so. Therefore, to the extent that Plaintiffs intended to raise a § 1983 individual-liability claim against Defendant Johnson, the Court **GRANTS** summary judgment in favor of Defendant Johnson.[10]

## II.   THE DISTRICT'S MOTION FOR SUMMARY JUDGMENT

The District, in its motion for summary judgment, argues that it is entitled to summary judgment on each of Plaintiffs' claims. (Doc. 43.) The Court will address each of Plaintiffs' claims in turn.

### A.     Negligent Hiring and Retention Claim

In their amended complaint, Plaintiffs allege that the District negligently hired and retained Defendant Johnson. (Doc. 1, Attach. 7 at 6.) Specifically, Plaintiffs allege that the District failed to perform an appropriate background check on Defendant Johnson before hiring him and negligently retained Defendant Johnson "when [the District] knew or should have known of Defendant Johnson's past inappropriate conduct . . . ." (Id. at 7.) In its motion, the District argues that it is entitled to summary judgment on Plaintiffs' negligent hiring and retention

---

[10] Although Plaintiffs' other claims against Defendant Johnson appear to suffer from the same pleading issue, the Court declines to address this deficiency because the Court has dismissed Plaintiffs' claims against Defendant Johnson on other grounds.

claim because "the District is a public school district entitled to sovereign immunity." (Doc. 43 at 14-15.) The Court agrees with the District.

The Georgia Constitution provides sovereign immunity to the "state and all of its departments and agencies." Ga. Const. art. 1 § 2, para. 9(e). "County school districts are protected under this provision" of the Georgia Constitution. Bowen v. Telfair Cnty. Sch. Dist., 418 F. Supp. 3d 1265, 1271 (S.D. Ga. 2019) (citing Wellborn v. Dekalb Cnty. Sch. Dist., 227 Ga. App. 377, 379, 489 S.E.2d 345, 347 (Ga. Ct. App. 1997) ("The [] School District is a political sub-division of the State of Georgia, and is vested with sovereign immunity unless such immunity is waived in accordance with [the Georgia Constitution]."); Coffee Cnty. Sch. Dist. v. Snipes, 216 Ga. App. 293, 294, 454 S.E.2d 149, 150 (Ga. Ct. App. 1995) ("We conclude that the 1991 amendment extending sovereign immunity 'to the state and all of its departments and agencies' includes county-wide school districts . . . ."). Sovereign immunity "can be waived only by an Act of the [Georgia] General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." Wellborn, 227 Ga. App. at 379, 489 S.E.2d at 347.

Plaintiffs argue that under O.C.G.A. § 50-21-23(a), the Georgia Torts Claims Act waived sovereign immunity for torts committed by state employees while acting within the scope of their

20

official duties. (Doc. 50 at 6-7.) Based on this waiver, Plaintiffs contend that the District is not protected from liability for any torts committed by Defendant Johnson because Defendant Johnson acted within the scope of his duties as a teacher for the District when he allegedly raped John Doe. (Id. at 7.) Plaintiffs, however, appear to misunderstand the GTCA.

It is true that "[t]he General Assembly waived portions of the state's sovereign immunity in the Georgia Tort Claims Act." Bowen, 418 F. Supp. 3d at 1271 (citing O.C.G.A. § 50—21-20 et seq.) This limited waiver, however, "expressly excludes counties and school districts . . . ." McDaniel v. Fulton Cnty. Sch. Dist., 233 F. Supp. 2d 1364, 1387 (N.D. Ga. 2002); Bowen, 418 F. Supp. 3d at 1271; see also O.C.G.A. § 50—21-22(5) (defining the word "state" in the GTCA to exclude counties and school districts). "Therefore, the [GTCA] does not divest the School District of its sovereign immunity." Hackett, 238 F. Supp. 2d at 1367. Because Plaintiffs have "failed to identify any legislative act that waives the immunity of [the District] in this action, the [District] is immune from suit" on Plaintiffs' negligent hiring and retention claim. Id. Accordingly, the District's motion for summary judgment (Doc. 43) is **GRANTED** on Plaintiffs' negligent hiring and retention claim.

B.   Title IX Claim

Next, the District argues that it is entitled to summary judgment on Plaintiffs' Title IX claim. (Doc. 43 at 17.) In their

Title IX claim, Plaintiffs allege that John Doe was subjected to harassment and discrimination when Defendant Johnson sexually assaulted him. (Doc. 1, Attach. 7 at 8.) As a result, Plaintiffs argue that the District is liable under Title IX for failing to prevent Defendant Johnson's sexual misconduct. (Id.)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "The Supreme Court has recognized an implied right of action for money damages in Title IX cases of intentional sexual discrimination and has held that a teacher's sexual harassment of a student constitutes actionable discrimination under Title IX." Doe v. Sch. Bd. Of Broward Cnty., Fla., 604 F.3d 1248, 1254 (11th Cir. 2010) (citing Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75-76, 112 S. Ct. 1028, 1037-38, 117 L. Ed. 2d 208 (1992)). When considering "teacher-on-student sexual harassment, our analysis is governed by the Supreme Court's decision in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)." Broward, 604 F.3d at 1254. Under Gebster, a plaintiff "seeking to recover damages against a school district for teacher-on-student sexual harassment must establish two things to survive summary judgment: (1) a school district official with the authority to take

22

corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct." Sauls v. Pierce Cnty. Sch. Dist., 399 F.3d 1279, 1284 (11th Cir. 2005) (citing Gebser, 524 U.S. at 290-93, 118 S. Ct. at 1999-2000).

A plaintiff can satisfy the "actual notice" requirement by showing that a school district official with the authority to take corrective measures "had knowledge that [the teacher] was actually sexually harassing [a student]." J.F.K. v. Troup Cnty. Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012). Here, it is undisputed that John Doe's parents notified District officials about Defendant Johnson's misconduct for the first time on May 1, 2017.[11] With that in mind, the only issue in dispute is whether, upon learning of the alleged sexual misconduct, the District's response amounted to deliberate indifference.

"The deliberate indifference standard is a high one." Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998). "[S]chool administrators will only be deemed deliberately

---

[11] It is also undisputed that Principal Broadnax, Rob Gordon, and Ramon Ray constitute "school district official[s] with the authority to take corrective measures . . ." for purposes of a Title IX claim. See KB v. Daleville City Bd. of Educ., 536 F. App'x 959, 962-63 (11th Cir. 2013) ("Like the majority of our sister circuits, [the Eleventh Circuit] has not hesitated in concluding that principals, as the highest ranking school officials present at schools every day, are high enough on the chain of command to impute liability to the school board." (quotations omitted)).

indifferent if their 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.' " Broward, 604 F.3d at 1259 (quoting Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648, 119 S. Ct. 1661, 1674, 143 L. Ed. 2d 839 (1999)). In other words, the administrators are deliberately indifferent when they make "an official decision . . . not to remedy the [Title IX] violation." Gebser, 524 U.S. at 290, 118 S. Ct. at 1999.

Plaintiffs contend that the District was deliberately indifferent to Defendant Johnson's misconduct because the District "continued to employ and pay Defendant Johnson" after learning about the sexual misconduct. (Doc. 50 at 9.) In effect, Plaintiffs take issue with the District's decision to not renew Defendant Johnson's contract rather than immediately terminate him after being notified of his misconduct. Based on the undisputed evidence, this Court finds the precautionary actions taken by the District in response to John Doe's complaint were not "clearly unreasonable in light of the known circumstances." Broward, 604 F.3d at 1259 (quoting Davis, 526 U.S. at 648, 119 S. Ct. at 1674).

Upon learning about John Doe's allegations against Defendant Johnson, school administrators and District officials, promptly began investigating the matter. Immediately after speaking with John Doe's parents, Principal Broadnax called the resource officer, her supervisor, and the District's director of risk

24

management, Rob Gordon, and informed them of John Doe's allegations. (Doc. 43, Attach. 7 at ¶ 53; Doc. 50, Attach. 9 at ¶ 53; Doc. 50, Attach. 1 at 20.) Broadnax also called the Savannah High School social worked so that she could contact the Department of Family and Child Services. (Doc. 43, Attach. 7 at ¶ 53; Doc. 50, Attach. 9 at ¶ 53; Doc. 50, Attach. 1 at 20.) Right away, District officials contacted the Metro Police Department, interviewed Defendant Johnson, transferred John Doe to another school for his safety, inspected Defendant Johnson's emails, and, even though Defendant Johnson denied the allegations, prohibited Defendant Johnson from having access to students. (Doc. 43, Attach. 7 at ¶ 56; Doc. 50, Attach. 9 at ¶ 56; Doc. 43, Attach. 7 at ¶ 59; Doc. 50, Attach. 9 at ¶ 59.) This response by the District does not evidence deliberate indifference. See, e.g., Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1373-75 (11th Cir. 2000) (finding no deliberate indifference where school officials conducted an investigation, interviewed relevant parties, ordered the alleged harasser to stay away from the alleged victim, and closely monitored the harasser's subsequent behavior); Saphir by and through Saphir v. Broward Cnty. Pub. Sch., 744 F. App'x 634, 637 (11th Cir. 2018) (finding no deliberate indifference where school officials immediately initiated a formal investigation and placed the teacher on administrative leave after receiving a complaint that the teacher touched a student's genitals); Hackett, 238 F.

Supp. 2d at 1348 (finding no deliberate indifference where the principal, immediately after receiving information that a teacher was acting inappropriately, called the school district, removed the teacher from his classroom, and investigated the allegations).

Although Plaintiffs take issue with the District's decision to not renew Defendant Johnson's contract rather than immediately terminate him, Plaintiffs have not offered any support for their contention that this decision was deliberately indifferent. Within a day of receiving John Doe's complaint, the District made an internal decision not to renew Defendant Johnson's employment contract. (Doc. 43, Attach. 7 at ¶ 60; Doc. 50, Attach. 7 at ¶ 60; Doc. 50, Attach. 8 at 22.) Just ten days after John Doe reported the sexual misconduct, on May 11, the District formally notified Defendant Johnson that his contract would not be renewed and that his employment would terminate on June 30, 2017. (Doc. 43, Attach. 5 at 36.)

The District has provided evidence that District officials chose to not renew Defendant Johnson's contract rather than terminate him because nonrenewal appeared more efficient. At the time the District received notice of Defendant Johnson's misconduct, the deadline to renew teachers' contracts was merely two weeks away. (Doc. 43, Attach. 5 at 4-5; Doc. 55 at 13.) Simply not renewing Defendant Johnson's contract allowed the District to

forgo additional due process procedures required when terminating a tenured teacher's contract. (Doc. 43, Attach. 5 at 4-5.)

Because Defendant Johnson requested a hearing on his nonrenewal, however, the District had no option but to delay his termination until after the hearing. See O.C.G.A. § 20-2-942. Regardless, Defendant Johnson resigned before the hearing occurred.[12] (Doc. 43, Attach. 5 at 55, 57-58, 61.) In total, Defendant Johnson's employment with the District continued, in a restricted role away from students, for 91 days after John Doe reported the sexual assault to school officials. In the Court's view, the District was required by Georgia law to allow Defendant Johnson to request a hearing and an opportunity to be heard and such a delay does not equate to deliberate indifference, especially considering that Defendant Johnson was not allowed to have contact with students during that time. See, e.g., KB v. Daleville City Bd. of Educ., 536 F. App'x 959, 966 (11th Cir. 2013) (affirming summary judgment to school board where superintendent recommended a janitor's termination for inappropriately touching a student within a week of the student's complaint and, approximately two months after the incident, the school board approved the

---

[12] In conjunction with the above described disciplinary matters, the District took the additional step of reporting John Doe's allegations to the Georgia Professional Standards Commission, and on December 11, 2017, in response to the District's report, the Commission revoked Defendant Johnson's teaching license. (Doc. 43, Attach. 5 at 5, 65.)

recommendation); <u>Doe v. Univ. N. Ala.</u>, No. 3:17-CV-01344-CLS, 2020 WL 6081966, at *20 (N.D. Ala. Oct. 15, 2020) (concluding university was not deliberately indifferent where university officials placed the accused professor on administrative leave, forbid him from communicating with students, and decided not to renew his employment contract because the university officials "believed that solution was the quickest way to protect Jane Doe"); <u>cf.</u> <u>Williams v. Bd. of Regents of Univ. Sys. Of Ga.</u>, 477 F.3d 1282, 1297 (11th Cir. 2007) (finding a university was deliberately indifferent where the university waited almost eleven months to take corrective action after a student reported her sexual assault).

Plaintiffs attempt to rely on the Eleventh Circuit's decision in <u>Doe v. Sch. Bd. of Broward Cty., Fla.</u>, 604 F.3d 1248, 1259 (11th Cir. 2010), to support their contention that the District was deliberately indifferent. (Doc. 50 at 8-9.) In the Court's view, however, <u>Broward</u> is materially distinguishable from this case. In <u>Broward</u>, a high school teacher sexually assaulted a ninth-grade student. 604 F.3d at 1250. Prior to the plaintiff's sexual assault, two other students had complained to the principal about inappropriate behavior by the teacher. <u>Id.</u> at 1250-52. Although the principal took some action to address the prior complaints, the Eleventh Circuit found that the principal's response to the prior complaints was unreasonable in light of his knowledge of the

teacher's pattern of behavior. Id. at 1262. Specifically, the
Eleventh Circuit concluded that "[o]nce [the principal] had actual
notice of a second complaint, his failure to institute any
corrective measures aimed at ferreting out the possibility of [the
teacher's] sexual harassment of his students could constitute
deliberate indifference." Id. at 1261.

In stark contrast to the circumstances in Broward, Plaintiffs
have not offered any evidence that complaints were lodged against
Defendant Johnson before John Doe reported misconduct.[13]  In
addition, the criminal background checks performed by the District
prior to Defendant Johnson's employment and throughout his
employment did not reveal any criminal history involving sexual
misconduct. (Doc. 43, Attach. 5 at 25-26.) Unlike the principal in
Broward, who had knowledge of the teacher's propensity to engage
in inappropriate behavior and failed to implement protective
measures, District officials had no knowledge of any prior
circumstances involving Defendant Johnson that gave rise to the
need for precautionary measures.

---

[13] Plaintiffs' complaint alleges generally that the District
received prior complaints about Defendant Johnson engaging in
sexual misconduct with other students. (Doc. 1, Attach. 7 at 5.)
Plaintiffs, however, have not offered any evidence to substantiate
these allegations. Perhaps because Plaintiffs' allegations are
unsubstantiated, Plaintiffs, in their response to the District's
motion, seem to abandon their allegation that the District received
prior complaints about Defendant Johnson. Plaintiffs do not
dispute the District's contention that it received notice of
Defendant Johnson's misconduct for the first time on May 1, 2017.

Even viewing the facts in the light most favorable to Plaintiff, the Court finds that the District promptly and effectively responded to John Doe's allegations against Defendant Johnson. Within a day of receiving notice of Defendant Johnson's misconduct, the District prohibited Defendant Johnson's access to students and John Doe was immediately transferred to another school for his safety. (Doc. 43, Attach. 4 at 11; Doc. 43, Attach. 7 at ¶ 54; Doc. 50, Attach. 9 at ¶ 54.) And within ten days, the District notified Defendant Johnson that his contract would not be renewed. (Doc. 43, Attach. 5 at 36.) Although Defendant Johnson ultimately did not resign until 91 days after John Doe's complaint, Plaintiffs have not alleged that Defendant Johnson had any contact with John Doe or any other students during that time, indicating that the District's precautions effectively prevented further harm. See KB, 536 F. App'x at 966 (affirming the district court's finding of summary judgment for the school board because the school board's response to a janitor touching a student's buttocks was "swift and effective" where "[u]pon learning of [the student's] allegations against [the janitor], [the principal] immediately restricted his movements"). Because Plaintiffs cannot show that the District was deliberately indifferent to Defendant Johnson's misconduct, the Court **GRANTS** the District's motion for summary judgment (Doc. 43) on Plaintiffs' Title IX claim.

C. Section 1983 Claim

Finally, Plaintiffs assert that the District is liable for John Doe's injuries under 42 U.S.C. § 1983. (Doc. 1, Attach. 7 at 9-10.) As a municipal entity, a school district " 'may not be held liable for constitutional deprivations on the theory of respondeat superior.' " Denno v. Sch. Bd. Of Volusia Cnty., Fla., 218 F.3d 1267, 1276 (11th Cir. 2000) (citing Monell, 436 U.S. at 691, 98 S. Ct. at 2037).[14] "Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Id. (citing Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38).

In their amended complaint, Plaintiffs do not contend that the District had a policy or custom of condoning sexual misconduct between students and teachers. In fact, it is undisputed that the District has a policy prohibiting sexual relations between students and teachers. (Doc. 43, Attach. 7 at ¶ 2.)[15] Instead,

---

[14] "School boards constitute branches of local government and thus may be subject to liability under Monell." Denno, 218 F.3d at 1276 n.9.

[15] In their response to the District's statement of material facts, Plaintiffs appear to deny that the District has adopted this policy. (Doc. 50, Attach. 9 at ¶ 2.) Plaintiffs, however, have not explained why they dispute this fact and simply contend that they "are without sufficient information or knowledge to admit" that the policy has been adopted. (Id.) Because the District has provided evidence that it has adopted the policy and because

Plaintiffs contend that the "District had a longstanding policy, practice and/or custom of lax investigation and non-responsiveness to information that an employee . . . had a propensity to engage in sexual conduct with [students]." (Doc. 1, Attach. 7 at 9-10.) Plaintiffs further allege that the District "acted with deliberate indifference in its gross failure to adequately investigate previous complaints against Defendant Johnson." (Id. at 9.)[16]

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001) (quotations omitted). Moreover, "if the municipality tacitly authorizes the constitutional

Plaintiffs have failed to offer evidence to the contrary, the Court will accept that the District has adopted such a policy. See Fed. R. Civ. P. 56(e)(2).

[16] In their response to the District's motion, Plaintiffs assert a new ground for § 1983 liability, alleging that the District should have had a policy preventing students from riding in teachers and administrators' cars. (Doc. 50 at 7-8.) As the Court previously stated, "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour, 382 F.3d at 1315. Because Plaintiffs failed to raise this theory of liability in their complaint, the Court declines to consider whether the District violated § 1983 with respect to allowing students to ride in teachers or administrators' cars. See Dukes v. Deaton, 852 F.3d 1035, 1046 (11th Cir. 2017) (affirming summary judgment to police commander where the plaintiff raised an alternative theory of § 1983 supervisory liability for the first time in her brief in opposition to summary judgment).

deprivations committed by its employees or routinely displays deliberate indifference to the consequences of acts of misconduct by its employees, then the municipality's failure to take corrective actions can rise to the level of a custom or policy." Hackett, 238 F. Supp. 2d at 1362 (citing Griffin, 261 F.3d at 1308 (11th Cir. 2001)).

Plaintiffs have not established that the District routinely ignored complaints about teachers' sexual misconduct with students. Plaintiffs do not offer any evidence that the District knew of any prior complaints about Defendant Johnson engaging in sexual misconduct. Nor do Plaintiffs offer any evidence that the District received and ignored complaints about any other employees engaging in sexual misconduct with students. No reasonable juror could conclude that the prompt investigation and decision to not renew Defendant Johnson's contract amounted to "tacit authorization" of Defendant Johnson's conduct. See Hackett, 238 F. Supp. 2d at 1365 (holding that tacit approval derives from a district's repeated "failure to correct the problem"). Further, one complaint about Defendant Johnson does not establish that the District regularly displayed deliberate indifference to acts of misconduct by its staff. Plaintiffs have failed to show a "persistent failure [by the District] to take disciplinary action against [District employees]" to support "the inference that a municipality has ratified conduct, thereby establishing a 'custom'

33

within the meaning of Monell." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) (citing Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38); see also, Brinkley, 2021 WL 1233352, at *8-9 (granting summary judgment to school district because one prior complaint about a teacher did not establish that the school district "routinely displayed deliberate indifference to acts of misconduct by its employees").

Additionally, Plaintiffs have offered no evidence to support their contention that the District routinely hired employees without conducting an adequate background check. The record reflects that the District conducted a background check on Defendant Johnson prior to hiring him and that the District conducted additional background checks throughout his employment. (Doc. 43, Attach. 5 at 4, 22-34.) Plaintiffs have not presented any evidence that the District failed to discover material omissions, misrepresentations, or misconduct on Defendant Johnson's, or any other employee's, criminal history record.

Even assuming that the District had failed to conduct a thorough background check on Defendant Johnson, "the failure to conduct a thorough background check on one job applicant does not equate to a custom or policy of conducting inadequate background checks for all job applicants." Hackett, 238 F. Supp. 2d at 1363. Because Plaintiffs cannot show that the District had a custom of ignoring complaints related to sexual misconduct or performing

34

inadequate background checks on employees, Plaintiffs' § 1983 claim against the District must fail.[17] Consequently, the District's motion (Doc. 43) is **GRANTED** on Plaintiffs' § 1983 claim.[18]

### CONCLUSION

For the foregoing reasons, Defendant Johnson's motion for summary judgment (Doc. 39) is **GRANTED** and the District's motion for summary judgment (Doc. 43) is **GRANTED**. As a result, Plaintiffs'

---

[17] Even if the Court considered the merits of Plaintiffs' newly raised argument that the District is liable under § 1983 for failing to have a policy that prevented students from riding in teachers or administrators' cars, the District would also be entitled to summary judgment on this claim. To hold the District liable under § 1983 for Defendant Johnson's misconduct, "it is not enough for [Plaintiffs] to show that there were things that [the District] could have done differently, or things it should have done differently." Hackett, 238 F. Supp. 2d at 1366. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989)). Instead, to hold the District liable under § 1983, Plaintiffs need to establish that the District, after learning about Defendant Johnson's sexual misconduct, was "deliberately indifferent to the harm that [Defendant Johnson] was causing . . . ." Hackett, 238 F. Supp. 2d at 1366. The record is clear, however, that the District's prompt response to John Doe's complaint was far from deliberately indifferent. Because Plaintiff has not shown that District officials were deliberately indifferent to Defendant Johnson's misconduct, Plaintiffs' argument that the District should have had a different policy would fail on the merits as well.

[18] Defendants also filed a joint motion to exclude or limit certain opinions offered by Plaintiffs' expert Dr. Tom D. Black. (Doc. 41.) Because the Court has granted Defendants' motions for summary judgment without any consideration of Dr. Black's opinion, it is unnecessary for the Court to address this motion. Accordingly, Defendants' motion to exclude (Doc. 41) is **DISMISSED AS MOOT.**

claims against Defendant Johnson and the District are **DISMISSED**.

The Clerk of Court is **DIRECTED** to close this case.

   SO ORDERED this *3RD* day of August 2021.

                                    _____
                                    WILLIAM T. MOORE, JR.
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF GEORGIA